# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **FORREST HUNTER GREER,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00045 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Roger W. Rutherford, Wolfe, Williams, Rutherford & Reynolds, Norton Virginia, for Plaintiff. Eric P. Kressman, Regional Chief Counsel, Region III, Donald K. Neely, Assistant Regional Counsel, Charles J. Kawas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Forrest Hunter Greer filed this claim challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (the "Act"). 42 U.S.C.A. §§ 1381-1383f (West 2003 & Supp. 2011). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 1383(c)(3).

Greer filed an application for benefits on December 5, 2008, alleging disability beginning on December 1, 2008. The application was denied initially and on reconsideration. A hearing was held before an administrative law judge ("ALJ") on December 9, 2010. At the hearing, Greer, represented by counsel, and an independent vocational expert testified. The ALJ denied his claim and that decision became final when the Social Security Administration Appeals Council denied his request for review. Greer then filed his Complaint in this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed. The case is ripe for decision.

II

Greer was born on March 2, 1989, making him a younger individual under the regulations. 20 C.F.R. § 416.963(c) (2011). He lives with and helps to care for his grandmother. He has no past work qualifying as past relevant work but has worked as a landscape laborer, a roofer helper and as a temporary electric cleaner for a motor rebuilding manufacturer. He claims disability because of his mental retardation.

Greer graduated high school in 2007 with a modified diploma received via special education services. He was ranked 54th in his class of 133 students. His

transcript reflects primarily As, Bs, and Cs. While he was in the tenth grade, the school noted that his learning disability affected his ability to independently perform grade level work, he was argumentative at times, he was talkative and easily distracted by auditory and visual stimulation, and he struggled in all academic areas. Accommodations given to Greer included disregarding spelling/grammar errors, providing audiotapes of books, allowing extended time for assignments and tests, and providing a reader for tests. His motor skills and life skills were described as age appropriate. In the twelfth grade, Greer took auto technician vocational classes and his ability to follow instructions, stay on task and complete assignments were rated as satisfactory. Transition service documentation indicates that Greer intended to pursue full-time competitive employment following high school.

On December 10, 2008, Greer presented to the Southwest Virginia Community Clinic and was evaluated by Bill McFeature, Ph.D., a psychologist. Greer reported that he had graduated from high school and was offered a baseball college scholarship but turned it down because of his learning difficulties. He said he could not read or write well and that he suffered from anger problems and internal anxiety. Dr. McFeature assessed Greer as oriented in all spheres but appearing to be of low average intelligence by vocabulary. He diagnosed him with adjustment reaction with mixed disturbance of emotions and conduction and

arranged to see Greer every two weeks to address anger issues and low self-esteem. At the January 6, 2009 appointment, Dr. McFeature concluded that Greer's IQ was borderline, based on his vocabulary. Greer reported some progress in dealing with anger issues.

Dr. McFeature referred Greer to Juan F. Rodriguez, M.D., a psychiatrist. Dr. Rodriguez first saw Greer on February 18, 2009. On reviewing Greer's school records and learning that Greer had never been medicated for his learning disability or anger outbursts, Dr. Rodriguez concluded that Greer had intermittent explosive disorder and a learning disability and gave him a trial of geodon.

In March 2009, Kathy Jo Miller, M.Ed., Licensed Psychological Examiner, and Robert Spangler, Ed.D., Licensed Psychologist, performed a consultative psychological examination. At the time, Greer reported he was not taking his prescribed medication. Miller observed that Greer was socially confident and comfortable, understood instructions for each task, demonstrated good concentration and was appropriately persistent on tasks. Greer stated that he had started treatment for his anger in December 2008 and found counseling to be much more effective than medication. On the mental status examination, Miller found Greer to be alert and oriented in all spheres, very pleasant and personable with no evidence of anger. He displayed normal speech and appeared to be of borderline intelligence. She administered the WAIS-IV and Greer achieved a Full Scale IQ of

72. Miller diagnosed Greer with mild intermittent explosive disorder, borderline intellectual functioning, functional illiteracy, and problems relating in large groups. He was found to have a global assessment of functioning ("GAF") score of 65.

Greer also returned to Dr. McFeature in March 2009 and reported he was managing his anger better with both his girlfriend and his parents. In April, he stated that he had not had any rageful incidents in the past month and was learning to resolve conflict with family and friends. Dr. McFeature observed that Greer appeared relaxed and noted that he was improved and coping well.

On March 25, 2009, Joseph I. Leizer, Ph.D., reviewed the file and assessed him with mild restriction of activities of daily living, mild to moderate difficulties maintaining social functioning and concentration, persistence and pace, and no episodes of decompensation.

Greer followed up with Dr. Rodriguez in June 2009. Dr. Rodriguez recorded that Greer was cooperative, but nervous. Although noting that school reports indicate learning disabilities, Dr. Rodriguez did not observe retardation, autism or asperger's syndrome. He diagnosed Greer with intermittent explosive disorder and attention deficit disorder and prescribed Strattera. In July 2009, Greer's mother informed Dr. Rodriguez that Greer's behavior was much better since being prescribed Strattera.

Also in June 2009, Richard J. Milan, Ph.D., reviewed Greer's file and agreed with Dr. Leizer's assessment regarding limitation in daily activities. Dr. Milan noted Greer was able to interact appropriately during the consultative examination with Miller. He concluded that Greer appeared to have the capacity to perform the mental demands for simple, routine, repetitive work in a stable environment.

Greer saw Dr. McFeature in July 2009. Dr. McFeature noted that Greer's academic testing reflected low IQ scores and a possible learning disability but he did not conduct any specific testing for confirmation. He decided to see Greer every month for maintenance sessions and impulse control management. In August, Dr. McFeature diagnosed mild ADD. In September, Greer reported working odd jobs and Dr. McFeature observed that he was coping well and doing well emotionally.

In September 2009, Greer returned to Dr. Rodriguez and reported that the Strattera caused him stomach upset. He seemed mildly nervous but otherwise normal. Dr. Rodriguez decreased his Strattera dosage. In December 2009, Greer reported that since he had received medicine, he had more desire and was looking for work. In April 2010, Dr. Rodriguez noted that Greer denied feeling depressed, sad, hopeless or helpless and assessed him with a GAF score of 55. There were no material changes in his prognosis in following appointments and Dr. Rodriguez maintained Strattera treatment.

He returned to Dr. McFeature in October 2010. Dr. McFeature opined that Greer's learning disability would be a "barrier to some employability." (R. at 298.) Greer reported that he was frustrated with himself and had low self-worth issues but that he was coping well. On November 30, 2010, Dr. McFeature noted that though Greer had barriers to employability, his coping was good and he was trying to seek manual labor positions. Dr. McFeature also prepared a Medical Assessment of Ability to do Work-Related Activities (Mental) in which he opined that, due to his severe learning disorder, Greer had no useful ability to function in all areas of making occupational adjustments and in all areas of making performance adjustments. In all areas of making personal-social adjustments, Dr. McFeature concluded that Greer had a fair ability to function due to mild depression.

At his hearing before the ALJ, Greer testified about his past work experience. He said that he had worked at landscaping but quit because he became irritated. He also tried roofing but quit and could not explain why. He also did temporary work on electric motors but was let go because he was not needed anymore. He confirmed that he had liked that job. He spends his time taking care of his grandmother, hanging out, and fishing. He discussed his anger problems but stated that if he took his medication, then he was "fine." (R. at 34.) The vocational expert testified that an individual with Greer's limitations, specifically

requiring no significant written instructions or appreciable writing demands, would be able to perform several jobs available in the national economy. The vocational expert noted that he was listing jobs that required the lowest level of reading and writing aptitude, i.e. from a first to third grade level. If limited as Dr. McFeature opined in his medical assessment, then the vocational expert testified that Greer would not be able to perform the basic mental demands of unskilled work.

In his opinion, the ALJ concluded that Greer had severe impairments of intermittent explosive disorder, learning disorder, borderline intellectual functioning, and attention deficit disorder, but they were not of listing-level severity. The ALJ found that Greer could perform a full range of work with certain nonexertional limitations. Based on this conclusion and the testimony of the vocational expert, the ALJ found that Greer was not disabled.

Greer argues the ALJ's decision is not supported by substantial evidence. For the reasons below, I disagree.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous

Case 1:11-cv-00045-JPJ-PMS   Document 15   Filed 02/13/12   Page 8 of 12   Pageid#: 375

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 416.920(a)(4) (2011). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id*. The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Greer argues that the ALJ's opinion was not based on substantial evidence because the ALJ gave "no weight" to the Mental Assessment of Dr. McFeature. (R. at 18.) Greer asserts that Dr. McFeature's opinion that he was unable to work was not supported by substantial evidence in the record and that the ALJ erred in disregarding it and relying instead on the opinions of the two state agency psychologists.

The issue of whether a claimant is disabled is reserved exclusively to the Commissioner. 20 C.F.R. § 416.927(e) (2011). Although source physician opinions are generally entitled to great weight, absent persuasive contradictory evidence, *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986), a treating source opinion on the ultimate question of disability is never entitled to controlling weight or special significance. *See* 20 C.F.R. § 416.927(e). Dr. McFeature's opinion that Greer's learning disability disables him from adjusting to a job is such an opinion.

In addition, Dr. McFeature's opinion is not supported by his own treatment notes or other medical evidence in the record. *See* 20 C.F.R. § 416.927(d) (2011). Dr. McFeature's early treatment notes do indicate Greer's borderline intelligence, learning disability and anger management issues, but his later notes observe improvement and a good ability to cope. Dr. McFeature apparently never performed any diagnostic testing to assess Greer's learning disabilities in a clinical manner. He recorded that Greer was working odd jobs and seeking employment in manual labor. After what appears to be a break in treatment of close to a year, Dr. McFeature notes only that Greer's learning and intelligence problems present barriers to some employment. This is not consistent with the very restrictive conclusions of his Mental Assessment and the ALJ was correct to disregard that opinion.

The substantial evidence in the record supports the ALJ's conclusion that Greer's impairments, while severe, do not preclude him from performing work in the national economy. In fact, Dr. McFeature's Mental Assessment is the only piece of evidence concluding that Greer's limitations are so severe as to preclude work. Dr. Rodriguez, Greer's treating psychiatrist, noted Greer's low intellectual functioning, but did not find mental retardation, autism or asperger's syndrome and assessed him with a GAF score of 55, indicating only moderate limitations. Further, Dr. Rodriguez's treatment of Greer with Strattera was successful, as Greer

himself testified, in controlling his depression and anger. The consultative examiner assessed Greer with a GAF score of 65 and noted that he interacted normally and had adequate social skills, despite borderline intelligence. She concluded that he only had mild work-related functional limitations. Both state agency psychologists concluded that Greer was mildly restricted in daily living, mildly to moderately restricted in social functioning and concentration, persistence or pace and had no episodes of decompensation. They both opined that he did not have work preclusive limitations. These opinions were supported by the evidence in the record and the ALJ properly gave them considerable weight in making his conclusions. *See Smith v. Schweiker*, 795 F.2d 343, 345-46 (4th Cir. 1986).

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: February 13, 2012

/s/ James P. Jones
United States District Judge

-12-
Case 1:11-cv-00045-JPJ-PMS   Document 15   Filed 02/13/12   Page 12 of 12   Pageid#: 379